

**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
*www.usdoj.gov/usao/or*

Leah K. Bolstad
Assistant United States Attorney
Leah.Bolstad@usdoj.gov
(503) 727-1000

**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Billy J. Williams, United States Attorney

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

October 23, 2018

Amy M. Baggio
Baggio Law
621 SW Morrison, Suite 1025
Portland, OR 97205

      Re:    *United States v. Tiler Evan Pribbernow*, Case No. 3:18-CR-00319-JO
               Plea Agreement

Dear Ms. Baggio:

1.    **Parties/Scope:** This plea agreement is between this United States Attorney's Office for the District of Oregon (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement does not apply to any charges other than those specifically mentioned herein.

2.    **Charges:** Defendant agrees to waive indictment and plead guilty to Count 1 of a Superseding Information charging him with conspiring to conduct and participate in the activities of a racketeering enterprise, in violation of Title 18, United States Code, Section 1962(d). The defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

3.    **Penalties:** The maximum sentence for Count 1 is life imprisonment, a fine of $250,000, five (5) years of supervised release, and a $100 fee assessment. Defendant agrees to pay the fee assessment by the time of entry of guilty plea or explain to the Court why this cannot be done. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.

    The defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the defendant will serve any term of imprisonment imposed.

4.    **Dismissal:** The USAO will move at the time of sentencing to dismiss any remaining counts against defendant.

Plea Offer, *T. Pribbernow*
Page 2

5.      **Sentencing Factors**: The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a).  Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

6.      **Elements of the Offense**: The elements of the offense to which the defendant has agreed to plead guilty, and which the Government would prove if the case went to trial are as follows:

      (1)   First, the charged enterprise – which is the Gypsy Joker Outlaw Motorcycle Club – was or would be established;

      (2)   Second, the enterprise or its activities affected interstate or foreign commerce;

      (3)   Third, the defendant knowingly agreed that either the defendant or another person would be associated with the enterprise; and

      (4)   Fourth, the defendant knowingly agreed that either he or another person would conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

7.      **Factual Admissions**: Defendant admits that the following facts are true and if this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt:

      (1)      From at least on or about January 1, 2008 through on or about October 1, 2018, the Gypsy Joker Outlaw Motorcycle Club [hereinafter referred to as "GJOMC"] was an "outlaw" motorcycle organization comprised of individual chapters located in cities throughout Oregon and Washington.  Each chapter included officers and general members, all of whom fell under the leadership of the national president and officers.  Associates and members followed a written code of conduct which identified the GJOMC as a "1%," or outlaw motorcycle club.  As such, the GJOMC was an enterprise, as defined in 18 U.S.C. § 1961(4), comprised of a group of individuals who associated together for common purposes.  The purposes of the enterprise included the following: (a) preserving and protecting the power, territory and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults and murder; (b) enriching the members and associates of the enterprise through, among other things, extortion, robbery, and distribution of narcotics; (c) keeping victims, potential victims, potential witnesses, and community members in fear of the enterprise and in fear of its members and associates through threats of violence and violence; (d) extorting money from other motorcycle organizations through fear and threat of violence; and (e) providing assistance to other members and associates who committed crimes for and on behalf of the enterprise; and providing assistance to other enterprise members and associates, in order to hinder, obstruct, and prevent law enforcement officers from identifying the offender, apprehending the offender, and trying to punish the offender.

      (2)      The GJOMC engaged in and had an effect on interstate or foreign commerce in the following ways, among others.  First, GJOMC members in Oregon and Washington paid dues to their local chapter, a percentage of which went to the national organization.  Second, the

Plea Offer, *T. Pribbernow*
Page 3

GJOMC communicated and associated with support club members, and collected dues from support clubs, in order to maintain a hierarchy, and to maintain rules and discipline within the gang. Third, the gang traveled interstate as an enterprise to commit racketeering acts, including transportation and receipt of stolen motorcycles, kidnapping, and narcotics trafficking.

> (3)    At all times relevant to the Information, defendant Tiler Pribbernow was an associate of the GJOMC via his membership in the Road Brothers Northwest Motorcycle Club, a GJOMC support club. He knew of the nature of the GJOMC enterprise's activities, including acts of violence, murder, robbery, kidnapping, and obstruction of justice. At all times relevant to the Information, Pribbernow conspired with others and agreed to conduct and participate, and did conduct and participate, directly and indirectly, in the conduct of the affairs of the GJOMC enterprise through a pattern of racketeering activity consisting of acts involving murder, in violation of Oregon Revised Statutes, Sections 161.155, 163.115(1)(a), and 163.115(1)(b), and Washington Revised Statutes, Sections 9A.08.020 and 9A.32.030; kidnapping, in violation of Oregon Revised Statutes, Sections 163.235 and 163.225, and Washington Revised Statutes, Sections 9A.40.020 and 9A.40.030; robbery, in violation of Oregon Revised Statutes, Sections 165.415 and 165.405; extortion, in violation of Oregon Revised Statutes, Section 164.075; and drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846; as well as acts indictable under Title 18, United States Code, Section 1512 (tampering with a witness, victim, or informant).

> (4)    Specifically, Pribbernow agreed that he or a coconspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the GJOMC.

8.    **Acceptance of Responsibility**: Defendant must demonstrate to the Court that he fully admits and accepts responsibility under U.S.S.G. § 3E1.1 for his unlawful conduct in this case. If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level. The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in U.S.S.G. § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in U.S.S.G. § 3E1.1.

9.    **Advisory Guideline Calculation**: The government anticipates that defendant has eleven (11) criminal history points, producing a criminal history category of V. [1]    The parties stipulate and agree to the applicability of the following base offense level and adjustments on Count 1 (RICO Conspiracy):

> (a) The base offense level for a violation of 18 U.S.C. § 1962(d) is driven by the greater of nineteen or the offense level(s) applicable to the underlying racketeering activity. U.S.S.G. § 2E1.1(a)(2), Application Note 1. The underlying racketeering activity for

---

[1] The criminal history is set forth as merely an estimate and the parties understand that the final criminal history calculation will be determined by the Court following the receipt of a PSR and this initial estimate is not binding upon the parties.

Plea Offer, *T. Pribbernow*
Page 4

the RICO charge in the Information is: (1) the murder of Robert Huggins on or about July 31, 2015, in violation of Oregon Revised Statutes, Sections 161.155, 163.115(1)(a), and 163.115(1)(b), and Washington Revised Statutes, Sections 9A.08.020 and 9A.32.030; (2) the kidnapping of Robert Huggins resulting in death on or about July 30, 2015, in violation of Oregon Revised Statutes, Sections 163.235 and 163.225, and Washington Revised Statutes, Sections 9A.40.020 and 9A.40.030; and (3) the kidnapping of Robert Huggins in June 2014, in violation of Oregon Revised Statutes, Sections 163.235 and 163.225.

    (i) Regarding the July 31, 2015 murder, the base offense level is 43. U.S.S.G. §§ 2A1.1 and 1B1.3(a)(1)(B).

    (ii) Regarding the July 31, 2015 kidnapping resulting in death, the base offense level is 43. U.S.S.G. §§ 2A4.1(c)(1), 2A1.1, and 1B1.3(a)(1)(B).

    (iii) Regarding the June 2014 kidnapping, the base offense level is 32. U.S.S.G. §§ 2A4.1(a) and 1B1.3(a)(1)(B).

(b) The offense level for each underlying racketeering act must be taken into account under the grouping rules contained in Chapter 3 of the Sentencing Guidelines. U.S.S.G. § 2E1.1(a)(2), Application Note 1. The murder and kidnapping resulting in death offenses "group" (U.S.S.G. § 3D1.2(a)) while the separate kidnapping offense does not "group." (U.S.S.G. § 3D1.2(d)). Because the offense level for the kidnapping is nine (9) or more levels less serious than the offense level group for the murder and/or kidnapping resulting in death, there is no further increase in the offense level applicable to the murder and/or kidnapping resulting in death. (U.S.S.G. § 3D1.4(c)). The applicable adjusted offense level for the Information is therefore 43.

In summary, the parties stipulate and agree to the applicability of the following base offense level and adjustments on Count 1 (RICO Conspiracy):

| | | |
|---|---|---|
| (1) U.S.S.G. § 2A1.1 | - Base offense level | 43 |
| (2) U.S.S.G. § 3E1.1 | - Acceptance | - 3 |
| | - Total offense level | = 40 |

10.   **Government Sentencing Recommendation**: If defendant agrees to resolve his case prior to the November 12, 2018 deadline, and demonstrates an acceptance of responsibility as described above, the government will recommend as a reasonable sentence under the factors listed in 18 U.S.C. § 3553(a), **a sentence at the low end of the advisory sentencing guidelines range,** to be followed by five years of supervised release and a $100 fee assessment.

Plea Offer, *T. Pribbernow*
Page 5

11.    **Additional Departures, Adjustments, or Variances**: The USAO agrees not to seek any upward departures, adjustments, or variances to the advisory sentencing guideline range, or to seek a sentence in excess of that range, except as specified in this agreement. Defendant reserves the right to seek a downward departure, adjustment or variance from the applicable sentencing guidelines range determined by the Court, but he understands that the government may oppose such a request(s).

12.    **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory sentencing guidelines range as determined by the Court. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2). In the event that defendant's conviction under this agreement is vacated, the government may reinstate and/or file any other charges, and may take any position at a resentencing hearing, notwithstanding any other provision in this agreement.

13.    **Court Not Bound**: The defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. In determining the factual basis for the sentence, the Court will consider the above stipulations, together with the results of the presentence investigation, and any other relevant information. The defendant understands that the Court is under no obligation to accept the USAO's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The defendant understands that if the Court ascertains factors different from those contained in the stipulations set forth above, or if the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The defendant understands that neither the prosecutor, his own counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the defendant will receive. The defendant agrees that no one has made such a binding prediction or promise.

14.    **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the Court of the facts and law related to defendant's case. Except as set forth in this agreement,

Plea Offer, *T. Pribbernow*
Page 6

the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

15.    **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea. If defendant believes that the government has breached the plea agreement, he must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, he has waived any such claim and is precluded from raising a breach claim for the first time on appeal.

16.    **Memorialization of Agreement**: No promises, agreements or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court. If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

17.    **Deadline**: This plea offer expires if not accepted by **November 12, 2018**, at 5:00 p.m.

Sincerely,

BILLY J. WILLIAMS
United States Attorney

*/s/ Leah K. Bolstad*
LEAH K. BOLSTAD
Assistant United States Attorney

I have carefully reviewed every part of this agreement with my attorney. I understand and voluntarily agree to its terms. I expressly waive my rights to appeal as outlined in this agreement. I wish to plead guilty because, in fact, I am guilty.

11/7/18
Date

Tiler E. Pribbernow, Defendant

I represent the defendant, Tiler E. Pribbernow, as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

11/7/18
Date

Amy M. Baggio, Attorney for Defendant